IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AURA SALAZAR,
DAMARIS VENTURA,
on behalf of themselves and all others similarly situated,
Plaintiffs,

v.

FULFILLMENT AMERICA, INC.,
JOHN BARRY SR., and
JOHN BARRY JR.

Defendants.

CASE NO. 1:23-cv-11625-LTS

**PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS**

Plaintiffs file this petition for attorneys' fees and costs pursuant to Rule 23(h) of the Federal Rule of Civil Procedure and pursuant to the notice sent to class members in this case.[1] Plaintiffs' counsel seek an award of attorneys' fees of $175,000, which represents an amount well below counsel's lodestar fee amount and one-half of the $350,000 settlement fund. Additionally, Plaintiffs' counsel seek costs up to $20,000, including the costs of settlement administration, an amount that is lower than counsel's actual expenses. This award is fair and reasonable. It properly recognizes the substantial relief obtained for the class members, the significant work expended by the

[1] The notice to class members informed them: "Plaintiffs' lawyers will file a motion for attorneys' fees and costs by April 20, 2026. A copy of the motion will be posted on the settlement website. If you would like to receive a copy of that motion, please contact plaintiffs' lawyers through the contact information in the next section after that date." *See, e.g.*, www.fulfillmentamericacase.com.

attorneys over the past three years, and the risks that the attorneys took on in bringing this case, and it is commensurate with awards in similar cases.

As discussed in more detail below, it is appropriate for the Court to award the requested fee amount for several reasons, even though it exceeds the more typical one-third amount often awarded in common fund cases. Counsel have expended a substantial amount of hours to litigate the fact-bound, novel issues in this case. Counsel have done so on a contingent basis on behalf of workers in low-paying jobs who would otherwise lack access to counsel and would otherwise see their rights go unenforced.

This motion contains currently available information about Plaintiffs' counsel's fees and costs. The motion for final settlement approval will contain updated information, as well as information about items such as the notice process, the settlement claim rate, and expected settlement payments for claiming class members. Plaintiffs respectfully request that the Court review and rule on this petition in conjunction with Plaintiffs' motion for final settlement approval, at the final settlement approval hearing scheduled to take place on June 18, 2026.

**Background**

Plaintiffs filed this case on behalf of themselves and similarly situated co-workers against Fulfillment America, Inc. and two of its corporate officers, alleging violations of the Worker Adjustment and Retraining Notification Act ("WARN Act") and the Massachusetts Wage Act. Plaintiffs, who are both workers in low-paying jobs and primarily speak Spanish, worked for years in Defendants' Billerica warehouse. In the holiday season in 2022, they received a text abruptly terminating them. In this suit,

Plaintiffs alleged two counts, that Fulfillment America failed to provide sufficient notice of a mass layoff at the end of December 2022 and that Defendants failed to timely pay workers' termination wages. ECF No. 1. Plaintiffs sought lost wages, statutory trebling, interest, and attorneys' fees and costs. *Id.*

The Parties engaged in extensive discovery, including seven witness depositions, third-party subpoenas, expansive document production, as well as a site inspection of Fulfillment America's facility. *See* ECF Nos. 63-11, 63-12, 63-13, 65-5, 65-6, 65-7. The Court certified a class on October 15, 2024, ECF No. 49; *see also* ECF No. 84, consisting of "all workers who performed any hours of work in December 2022 at Fulfillment America, were laid off by Fulfillment America between December 31, 2022, and January 8, 2023, and who suffered a loss of employment and/or did not receive full wages owed at termination." ECF. No. 84. The Court denied Defendants' motion for summary judgment and set the case for trial. ECF No. 72.

Following a full-day mediation, the parties agreed to the settlement in December 2025. The Court granted preliminary approval of the proposed class and collective action settlement in this case on February 2, 2026. ECF No. 95. Notice subsequently went out to individuals in the class of approximately 200 who were eligible to participate in the settlement. While the claims period is pending, Plaintiffs' counsel have posted radio and social media advertisements about the settlement, hosted two video calls to answer class members' questions, and fielded numerous inquiries by telephone, email, and WhatsApp. The deadline to submit a claim form to participate in the case is May 8, 2026.

## ARGUMENT

### I. THE PROPOSED ATTORNEYS' FEE AWARD IS REASONABLE.

In the District of Massachusetts, courts hold that when attorneys' efforts create a fund for the benefit of the class, the common fund doctrine entitles them to reasonable fees drawn from the fund. *In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). The First Circuit recognizes two primary methods for calculating attorneys' fees in class action cases—the lodestar method and the percentage-of-the-fund method. *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307–08 (1st Cir. 1995). The lodestar method is based on "determining the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates." *Id*. at 305. For both the lodestar method and the percentage-of-fund method, the fundamental question for the Court in analyzing an attorneys' fee request is whether the requested award is "reasonable." *Id.*

Courts typically consider the seven "*Goldberger* factors," in weighing a request for an attorneys' fee award out of the common fund, specifically: "'(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.'" *In re Neurontin Mktg. & Sales Practices Litig.*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *In re Lupron Mktg. & Sales Practices Litig.,* 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005), citing *Goldberger v.*

*Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). Finally, the Court also looks at the reaction of the class, including whether any class member has objected. *Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *19 (D. Mass. Jan. 8, 2015).

Application of the *Goldberger* factors supports the fee award requested by Plaintiffs' counsel. Indeed, every factor weighs in favor of Plaintiffs' counsel's fee request.

**a. The tangible benefit to workers in the class amply supports the award (first *Goldberger* factor).**

The total settlement fund is $350,000. The settlement is non-reversionary, meaning that the entire amount (after payment of attorneys' fees, costs, and incentive payments) will be distributed to eligible class members; no amount will revert to Defendants. Schwab Aff. ¶ 2. Though the total amount to be distributed and range of awards will not be known until the close of the claim period, *see infra* § I(e), it is anticipated that most class members will on average receive approximately $1,400 each, assuming a 50% claim rate, with most receiving over $1,000.[2] Schwab Aff. ¶ 3. It is significant that the settlement payments are real money, going to real people—not coupons, discounts, or credits, the value of which may be difficult to estimate. *See, e.g.*, Manual for Complex Litig., 4th, Fed. Judiciary Center 2004, § 14.121 ("where the common benefits are in the form of discounts, coupons, options, or declaratory or

[2] As noted in Plaintiffs' Preliminary Approval motion, approximately 50-54% of class members could not be reached following certification due to lack of contact information or notices returned as undeliverable. Counsel has provided notice by publication and undertaken similar, additional efforts, *see infra* § I(e), but anticipate that the claim rate will not exceed 50%. If all class members did file a claim, the average amount of recovery would be over $700. *See* Schwab Aff. 3.

injunctive relief, estimates of the value or even the existence of a common fund may be unreliable").

The settlement thus provides substantial relief to the class while accounting for the risks, delays, and likelihood of recovery, and anticipated claim rate. Here, the size of the fund—which will afford real monetary relief to many class members—supports the requested fee award.

**b. The attorneys involved are highly skilled and experienced, and litigated this case efficiently, further justifying the award (second *Goldberger* factor).**

Plaintiffs' counsel have brought decades of expertise in class action litigation to this case. As set forth in the attached Affidavit of Hillary Schwab, Esq., the attorneys and organizations representing the Plaintiff class have extensive experience representing workers in wage and hour class actions in Massachusetts and nationwide. Schwab Aff. ¶¶ 4-8. This Court appointed the undersigned as class counsel in this case in its order certifying the class in October 2024. ECF No. 49.

Plaintiffs' counsel has achieved notable success in this case over the course of the litigation, including succeeding on class certification, litigating discovery disputes including a motion to compel inspection of Defendant Fulfillment America's premises, and defeating a motion for summary judgment. The latter decision involved briefing and argument on a fact-bound, relatively novel application of the Department of Labor's WARN Act regulations for which there was limited in-Circuit authority as well as application of the complicated joint employer test under the Massachusetts Wage Act. *See* ECF No. 72.

**c. This case spanned three years and involved novel, fact-bound issues, further supporting the request (third *Goldberger* factor).**

As numerous courts have observed, "wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts." *Brumley v. Camin Cargo Control, Inc.*, Civ. A. No. 08-1798, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012). Moreover, this case was complex even in the wage and hour context. The case was originally filed in July 2023. As noted, the substantive issues involved complex questions of determining Defendants' joint employer liability under the federal WARN Act, an issue that the First Circuit has not addressed, with scant precedent in this District. *See, e.g.*, ECF No. 72 at 11-14 (Summary Judgment Ruling, relying on Third Circuit and other out-of-Circuit authority, as well as DOL regulations). They also involved other WARN Act issues, including determining when a layoff has occurred, as well as still-developing joint employer jurisprudence under the Massachusetts Wage Act. In addition to substantive motion practice on these and other issues, the case has involved detailed discovery. This has included seven depositions, a site inspection, extensive documents and records produced by Fulfillment America, named Plaintiffs, and third-party subpoena recipients, and discovery motion practice.

In other cases involving novel legal issues, courts have held that significant fee awards are warranted. For example, in *In re Lupron Mktg. & Sales Practices Litigation*, the Court awarded the requested amount for attorneys' fees, noting: "The case has been vigorously contested from its inception, as evidenced by the number of decisions that have issued from this court and the Court of Appeals addressing matters of jurisdiction,

discovery, privilege, class certification, and substantive law." 2005 WL 2006833, at *4 (D. Mass. Aug. 17, 2005); *see also Erie County Retirees Association v. County of Erie, Pennsylvania*, 192 F. Supp. 2d 369, 380 (W.D. Pa. 2002) (noting that "[t]he novelty of the central issue . . . required substantial research and preparation at the summary judgment stage and ultimately, required appellate work before the United States Court of Appeals for the Third Circuit and the United States Supreme Court," which "weighs in favor of a fee award above the percentage that is typically awarded in common fund cases").

The length of this case and the complexity and depth of the issues involved amply support the requested fee award.

**d. Counsel has undertaken significant risk in the litigation, further supporting the request (fourth *Goldberger* factor).**

"Many cases recognize that the risk assumed by an attorney is 'perhaps the foremost factor' in determining an appropriate fee award." *In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *4 (quoting *Goldberger*, 209 F.3d at 54).

The risks in this case were substantial. It involved several novel legal issues, bearing potential risks at trial and a possible appeal. *See supra* § I(c). The workers served, almost all of whom primarily speak Spanish and have relatively transient employment, presented an additional factor. Counsel faced the risk that witnesses would be unavailable for trial or that key records would be lost.

Further, the Court should find the proposed attorneys' fees reasonable because Plaintiffs' counsel undertook this litigation entirely on a contingency basis and assumed

substantial risk in doing so. Courts have long recognized that, by permitting clients to retain attorneys without having to pay for hourly fees out-of-pocket, contingency-fee litigation provides critical access to the courts for people who otherwise would not be able to find competent counsel. That access is particularly important for the effective enforcement of public protection statutes, like the WARN Act and the Wage Act.[3] It is well recognized that "private suits provide a significant supplement to the limited resources available to [government enforcement agencies] for enforcing [public protection] laws and deterring violations." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979).

Another unique factor supporting the fee award in this case is that Plaintiffs' counsel proposes to front-load distributions to the class from the defendants' initial two payments and to have the final payment be all attorneys' fees, thereby increasing Plaintiffs' counsel's exposure to collection risk and ensuring that class members get paid as quickly as possible. As one court noted in reviewing an analogous arrangement, this results in "Plaintiffs' Counsel continu[ing] to shoulder risk of nonpayment." *See In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 133–34 (D.N.J. 2002) (discussing structure providing counsel percentage of funds immediately recovered and higher percentage of future awards or settlements, along with shares in newly formed entity). This structure further underscores the reasonableness of the requested fee.

[3] "Fee awards in wage and hour cases should 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) (counsel bringing cases under the FLSA "advance[e] Congress's goals under the FLSA to ensure a 'fair day's pay for a fair day's work'" and "to guard against 'the evil of "overwork" as well as "underpay"'") (internal citations omitted).

For workers in low-paying jobs—such as the named Plaintiffs and members of the certified class—paying hourly legal fees at rates of hundreds of dollars per hour is not a realistic means of vindicating workplace rights. Contingency representation is often the only viable mechanism through which such claims can be brought and successfully prosecuted, and fee awards must reflect the risk counsel assumes in making such representation possible.

As courts in this District have recognized, contingency fee arrangements enable law firms such as Fair Work, P.C., and nonprofit organizations such as Justice at Work to "serve the public interest" by undertaking class and collective actions that deter wage-law violations by employers. *Skirchak v. Dynamics Research Corp.*, 432 F. Supp. 2d 175, 178–79 (D. Mass. 2006) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)). Permitting private attorneys to prosecute such actions on an aggregate basis promotes effective enforcement of wage laws by motivating employer compliance and by creating meaningful incentives for counsel to pursue these claims. *Id.* at 179. The fact that Plaintiffs took on this case on a full contingency fee basis increased the risks. "'A contingency fee arrangement often justifies an increase in the award of attorneys' fees,'" because of contingency fee cases involve the "'investment of substantial time, effort, and money,'" with "'the risk[] of recovering nothing.'" *Lupron*, 2005 WL 2006833, at *4 (quoting *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir.1990)).

In spite of significant uncertainty in this case, Plaintiffs' counsel were able to negotiate a settlement that afforded substantial monetary and non-monetary relief to 200 class members. This factor also supports the requested fee award.

**e. Counsel devoted a significant amount of time to this fact-bound case and request an amount below their lodestar, further supporting the request (fifth *Goldberger* factor).**

As noted above, the substantive legal issues in this case required counsel to develop an extensive set of facts, and the nature of the workforce and employment structure involved magnified the challenges involved. This case was litigated all the way up to the eve of trial, including briefing and arguing of a fact-bound summary judgment motion raising novel issues, *see infra* § I(c), as well as detailed discovery. Additionally, Plaintiffs' counsel has expended many subsequent hours on settlement negotiation, the settlement approval process, and settlement administration (including facilitating notice, outreach to and communications with class members, calculating settlement amounts, etc.).

To date, Plaintiffs' counsel's hours, multiplied by reasonable hourly rates, come to:

| Firm | Timekeeper | Title | Years of experience | Hours | Rate | Fees |
|---|---|---|---|---|---|---|
| Fair Work, P.C. | Hillary Schwab | Attorney, Founding Partner | 20+ | 98.2 | $750 | $73,650.00 |
| Fair Work, P.C. | Osvaldo Vazquez | Attorney | 15+ | 460.3 | $600 | $276,180.00 |
| Fair Work, P.C. | Libbing Barrera Perez | Paralegal | | 7.8 | $175 | $1,365.00 |
| Fair Work, P.C. | Robert LeBron | Paralegal | | 5.7 | $175 | $997.50 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Justice at Work | Thomas Smith | Attorney, Executive Director | 15+ | 11.7 | $600 | $7,020.00 |
| Justice at Work | Keally Cieslik | Attorney | 6+ | 35 | $450 | $15,750.00 |
| Justice at Work | Pablo Carrasco | Attorney | 6+ | 138.15 | $450 | $62,167..50 |
| | | | | | | |
| Total | | | | 756.85 | | $437,130 |

Schwab Aff. ¶¶ 10-12. Plaintiffs' counsel expect that substantial additional time will be expended on remaining class settlement administration, communication with class members, briefing for final settlement approval, etc., between now and the end of the case as well. Schwab Aff. ¶ 14.

Courts in the First Circuit often apply a "multiplier" to the lodestar to reflect, for example, the results achieved by Plaintiffs' counsel or the risks assumed in undertaking representation on a contingent basis. *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 158 (D. Mass. 2015). Courts have found that awards ranging from a multiplier of 1-3 to be well within the norm. *E.g., In re Neurontin Mktg. & Sales Pracs. Litig.*, 58 F. Supp. 3d 167, 172 (D. Mass. 2014) (finding reasonable 3.32 multiplier); *see also id.* ("Generally, multipliers from 1–3 are the norm.") (quoting *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, and "ERISA" Litig.*, 4 F. Supp. 3d 94, 113 n. 20 (D.D.C. 2013)). In this case, Plaintiffs' counsel's requested fee reflects a *negative* lodestar multiplier of approximately 0.4, which will decrease further as counsel continues to expend time and effort administering the notice and claims process. "While multipliers of 2 and more have been found reasonable in common fund cases, negative multipliers are even more reasonable because 'there [is] 'no real danger of overcompensation' given that the requested fee represent[s] a discount to counsel's lodestar.'" *Herb v. Homesite Grp. Inc.*,

No. 1:22-CV-11416-JEK, 2024 WL 3593918, at *4 (D. Mass. July 31, 2024) (quoting *Hill v. State St. Corp.*, No. CIV.A. 09-12146-GAO, 2015 WL 127728, at *18 (D. Mass. Jan. 8, 2015); *accord McPhail v. First Command Fin. Plan., Inc.*, No. 05CV179-IEGJMA, 2009 WL 839841, at *8 (S.D. Cal. Mar. 30, 2009) ("[T]he proposed attorneys' fee award is less than Class Counsel's lodestar calculation, buttressing the Court's finding of reasonableness."). Further, Plaintiffs' counsel has not hired a third-party claims administrator but rather carried out the bulk of claims administration in-house, which saved costs and allowed Plaintiffs' counsel to maximize outreach and advice to the class through the claim period.

The requested award is well below Plaintiffs' counsel's lodestar fees to date, which come to well over $400,000, applying reasonable hourly rates. As of now, the lodestar multiplier for the requested fee award would be well below 1 ($175,000 divided by $437,130.00) at 0.4, and the multiplier will continue to go down as Plaintiffs' counsel expend additional time on settlement administration. This multiplier is well within the range of reasonableness. *See supra at* 12; *see also, e.g., In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 298-99, 303-04 (3d Cir. 2005) (approving fees with "fairly common" lodestar multiplier of over 4); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming district court's fee award for which the lodestar cross-check resulted in a 3.65 multiplier). In fact, the 0.4 multiplier is significantly lower than lodestar multipliers previously approved by this Court. *See, e.g., Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. 1998) (approving lodestar multiplier of 8.9, even where plaintiffs' counsel were "piggybacking" on prior success by another plaintiffs' firm in a

different case); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding fees representing 8.3 lodestar multiplier). Moreover, the lodestar multiplier will only decrease, because of the anticipated additional time that Plaintiffs' counsel will continue to spend on this case. Schwab Aff. ¶ 14.

The fact that the requested fee award results in a lodestar multiplier under 1.0 amply supports approving the fee award.

**f. The requested award is in line with awards in similar cases (sixth *Goldberger* factor).**

The requested fee award, with a lodestar multiplier under 1.0, is consistent with other fee awards in this District and elsewhere. As noted above, awards of lodestar multipliers between 1 to 3 are the norm and courts have often found them reasonable. And as a different Session of this Court concluded, "negative multipliers are even more reasonable because 'there [is] 'no real danger of overcompensation' given that the requested fee represent[s] a discount to counsel's lodestar.'" *Herb*, 2024 WL 3593918, at *4. The Court in *Hill* concluded that "the fact that counsel are seeking fees below the amount of class counsel's lodestar does support the reasonableness of the requested fee" and cited several similar cases in support. *Hill*, 2015 WL 127728, at *18 (citing *In re FUG Telecom Holdings, Ltd. Sec. Litig.*, No. 02–CV–3400 (CM)(PED), 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 515 (S.D.N.Y. 2009); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM), 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007)); *see also id.* (quoting *In re Veeco Instruments*, 2007

WL 4115808 ("'Not only is Plaintiffs' Counsel not receiving a premium on their lodestar to compensate them for the contingent risk factor, their fee request amounts to a deep discount from their lodestar. Thus, the lodestar 'crosscheck' unquestionably supports' the fee award").

The requested award is also in line with fees in similar cases when analyzed as a percentage of the common fund.[4] In cases involving wage-and-hour violations, recovery to class members may be small compared to "megafund" cases such as those in securities and consumer class actions. In applying the Fair Labor Standards Act, courts have recognized that it is "not uncommon in FLSA cases for attorneys' fees awards to exceed the damages recovered by employees." *James v. Boyd Gaming Corp.*, No. 19-2260-DDC-ADM, 2022 WL 4482477, at *13 (D. Kan. Sept. 27, 2022). This is because "FLSA cases often involve ordinary, everyday workers who are paid hourly wages and favorable outcomes frequently result in limited recoveries." *Id.*, quoting *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603–04 (2d Cir. 2020). Indeed, a different session of this Court has awarded a 50% fee request in a case involving restaurant workers in lower-paying jobs.[5] Other courts have similarly found that the range of recoveries in such cases can

---

[4] Here, both a lodestar and a percentage-of-fund analysis support the conclusion that the requested fee is reasonable. The First Circuit has held that either method of analysis is appropriate, and has even endorsed combining the two in appropriate cases. *See Pallotta v. Univ. of Mass. Mem'l Med. Ctr.*, No. 4:22-CV-10361-ADB, 2023 WL 8435181, at *1 (D. Mass. Dec. 5, 2023) (citing *In re Thirteen Appeals*, 56 F.3d at 307; *United States v. Metropolitan Dist. Com'n*, 847 F.2d 12, 15 (1st Cir. 1988)); *see also In re Thirteen Appeals*, 56 F.3d at 308 (courts' discretion "may, at times, involve using a combination of both methods when appropriate"); *accord Herb*, 2024 WL 3593918, at *4; *Roberts v. TJX Companies, Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *13 & n.13 (D. Mass. Sept. 30, 2016).

[5] *See* Order Approving Settlement, *Rose v. Ruth's Hospitality Group, Inc.*, No. 07-12166-WGY, ECF No. 72 (D. Mass. Oct. 28, 2009); *see also* Fee Petition, *Rose*, ECF No. 71 (Oct. 27, 2009). That case was not a Rule 23 class action but still required Court approval of the settlement.

reach 45% of the common fund. *See Mabry v. Hildebrandt*, No. CV 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015) ("In this Circuit, the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%.") (collecting cases); *Little v. Washington Metro. Area Transit Auth.*, 313 F. Supp. 3d 27, 35 (D.D.C. 2018) ("Fee awards in common-fund cases may range from fifteen to forty-five percent."). Counsel recognizes that the request here is at the high end of comparable cases, and that the more common percentage awarded is approximately 33%.[6] However, the lodestar comparison, and other factors such as the complexity of issues and results obtained, support the petition.

There is another consideration that supports this fee award as well—the settlement is non-reversionary, meaning that all of the money earmarked for the class will be distributed to claiming class members and none of it will revert to the Defendants. This is significant when considering the fee award as a percentage of the common fund, because courts regularly approve percentage of the fund fee awards in reversionary settlements that, in practice, result in the attorneys receiving 50% (or more) of the amounts actually paid out. *See, e.g., Roberts*, 2016 WL 8677312, at *11 (approving 1/3 fee award in contingency fee case, where "39% of the fund will revert to Defendants" so that "the fee award in this case is closer to a 50/50 split between Class Counsel and the class members"; lodestar multiplier was 1.96); *accord Cunningham v. Suds Pizza, Inc.*, 290 F. Supp. 3d 214, 224–25, 230-31 (W.D.N.Y. 2017) (discussing impact

[6] *E.g.*, *Mabry*, 2015 WL 5025810 (noting that requested amount of 40% was at the highest range of recovery but finding request justified based on comparison to lodestar and recovery obtained).

of reversionary language and ultimately awarding fee of 54% of actual value of settlement or 2.84 lodestar multiplier); *Friske v. Bonnier Corp.*, No. 16-12799, 2019 WL 5265324, at *2 (E.D. Mich. Oct. 17, 2019) (awarding requested percentage, which was less than lodestar amount, and noting high benefit to the class including because "[i]n this case, there is no reverter authorized by the settlement agreement; all of the net common fund will be distributed to claimants on a pro rata basis."); *cf. Pallotta*, 2023 WL 8435181, at *1 (noting that the court gives weight to the claims made and citing reversionary language to find benefit to class was not sufficiently substantial).

The requested fee amount is consistent with similar cases under either a lodestar or percentage-of-fund analysis, particularly when accounting for the fact that no funds will revert to Defendants. A comparison to similar cases therefore provides additional reason to grant the petition.

**g. Public policy considerations also support the award here (sixth *Goldberger* factor).**

As the Second Circuit held in *Goldberger v. Integrated Resources, Inc.*, attorneys' fee awards "should reflect the important public policy goal of 'providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.'" *Baudin v. Res. Mktg. Corp., LLC*, 2020 WL 4732083, at *13 (N.D.N.Y. Aug. 13, 2020) (quoting *Goldberger*, 209 F.3d at 51). Awarding attorneys' fees from the common fund recognizes the vital role that contingency arrangements play in making legal counsel available to individuals who cannot afford hourly fees. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 448 (1983) (noting that "[a]ttorneys who take cases on contingency, thus deferring

payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate").

Awarding fees from a common fund also incentivizes parties to discuss settlement early and reach an early resolution of a case, if possible. Indeed, it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 188 (W.D.N.Y. 2005). Moreover, awarding fees from a common fund recognizes that firms may spend years developing the case law in a particular field and obtaining favorable decisions, all of which contributes to early resolution of later cases. *See In re Giant Interactive Group Inc. Sec. Litig.*, 2011 WL 5244707, at *10 (S.D.N.Y. Nov. 2, 2011) (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d. 319, 359 (S.D.N.Y. 2005)) ("[T]he Court finds [th]at public policy supports the award of a 33% fee in this case, the better to 'attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so.'").

In the context of wage and hour class actions particularly, "public policy favors a common fund attorneys' fee award." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 477 (S.D.N.Y. 2013). Indeed, "[p]rotecting workers from wage-and-hour violations is of genuine public interest, and fees in such cases should provide incentives for counsel to bring such cases in the future." *Baudin*, 2020 WL 4732083, at *13; *see also Beckman*, 293 F.R.D. at 477 ("The FLSA and state wage and hour statutes are remedial statutes, the

purposes of which are served by adequately compensating attorneys who protect wage and hour rights.”). As one court has noted:

> Where relatively small claims can only be prosecuted through aggregate litigation, “private attorneys general” play an important role. . . Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. . . Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and [state wage laws].

*Daoust v. Maru Rest., LLC*, 2019 WL 2866490, at *5 (E.D. Mich. July 3, 2019).

Indeed, *this case* highlights the importance of sufficient contingent fee awards to workers in low-paying jobs. One of the entities involved, Justice at Work, is a not-for-profit that advocates on behalf of workers in low paying jobs. The issues these workers faced raised fact-bound questions in a developing area of the law and presented additional challenges, with low prospects for relatively high damages amounts to justify those challenges. Without the opportunity to recover sufficient attorney’s fees, the risk is high that workers with similar issues will see their rights go unenforced.

**h. The Class has reacted positively to the requested award, further supporting this petition.**

Finally, the fact that class members have been aware of the amount of proposed attorney’s fees since receiving the notice and have not objected supports the amount requested. *See Hill*, 2015 WL 127728, at *19. The named plaintiffs reviewed and executed the settlement agreement, which included the potential award, and the notice itself specifically advised that “[u]p to $175,000 of [the settlement] amount is proposed to be paid to the Plaintiffs’ counsel as attorneys’ fees. An additional amount of up to $20,000

will reimburse Plaintiffs' counsel for litigation expenses that they advanced in this case and the costs of administering the settlement." *See* ECF No. 93-3 at 3-4 (English-language version of Notice). To date, no class members have objected to the request or to the settlement as a whole.[7]

Plaintiffs' counsel took this case on a fully contingent fee arrangement, enforcing the wage and hour laws on behalf of hundreds of workers, the vast majority of whom would be wholly without remedy if not for Plaintiffs' counsel's advocacy.

## II. PLAINTIFFS' REQUESTED AWARD FOR COSTS IS REASONABLE.

The settlement agreement provides that Plaintiffs' counsel may request an award of costs of up to $20,000, including the costs of settlement administration. Schwab Aff. ¶ 15. Plaintiffs' counsel intend to submit updated information about costs with the motion for final settlement approval. To date, Plaintiffs' counsel have incurred over $18,000 in litigation and settlement administration expenses. This includes depositions (both in-person and by video); subpoenas; mediations; and costs associated with the class notice including costs of advertising over radio and social media. Plaintiffs' counsel have undertaken the bulk of settlement administration and anticipate further expenses. They have engaged a vendor for assistance administering the settlement website and the Qualified Settlement Fund; the current estimate for these services is approximately $3,500. Schwab Aff. ¶¶ 16-18.

[7] As noted in the Preliminary Approval Motion, Plaintiffs are concurrently posting this Motion on the settlement website and will post a Spanish-language version as well. The deadline to file objections is May 8, 2026.

Expenses such as those sought in this case have been awarded as reasonable in other class actions in this District. *See, e.g., Carlson v. Target Enterprises, Inc.*, 447 F. Supp. 3d 1, 6 (D. Mass. 2020) (awarding expenses requested by Plaintiffs in class action for "costs associated with mediation, travel expenses, filing fees, and postage"); *Bezdek v. Vibram USA, Inc.*, 79 F. Supp. 3d 324, 352 (D. Mass. 2015) ("The listed expenses include, among other things, costs associated with mediation, legal research, filing fees, consultation with experts, photocopying, and travel to hearings, depositions, and meetings. I find these expenses reasonable and will allow the request.").

Pursuant to the settlement agreement, Plaintiffs' counsel have agreed to seek only up to $20,000 in costs, even if actual costs exceed that amount. Plaintiffs' costs are reasonable.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' counsel's request for an award of $175,000 (one-half of the settlement fund) for attorneys' fees and an award of costs up to $20,000 is reasonable. Plaintiffs will renew and update their request for this award of attorneys' fees and expenses in the final settlement approval motion.

Respectfully submitted,

Plaintiffs,

AURA SALAZAR, DAMARIS VENTURA,
for and on behalf of themselves and all
others similarly situated,

By their attorneys,

*/s/ Osvaldo Vazquez*
Hillary Schwab (BBO #666029)
Osvaldo Vazquez (BBO #711808)
FAIR WORK P.C.
192 South Street
Boston, MA 02114
(617) 607-3260
hillary@fairworklaw.com
oz@fairworklaw.com

Keally Cieslik (*admitted pro hac vice*)
Thomas L. Smith (BBO #673200)
JUSTICE AT WORK, INC.
33 Harrison Ave., Suite 501
Boston, MA 02111
(617) 865-8419
kcieslik@jatwork.org
tsmith@jatwork.org

Dated: April 20, 2026

**CERTIFICATE OF SERVICE**

I certify that, on April 20, 2026, I served a copy of the foregoing document, through the ECF system, on all counsel for all parties.

*/s/ Osvaldo Vazquez*
Osvaldo Vazquez, Esq.